```
            UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
                FORT MYERS DIVISION
```

JIM CARRASCO, an individual,

      Plaintiff,

v.                              Case No:   2:16-cv-21-FtM-99CM

TOWN OF FORT MYERS BEACH, FLORIDA, a political subdivision of the State of Florida,

      Defendant.

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion for Summary Judgment (Doc. #22) and supporting documentation (Doc. #23) filed on May 4, 2017. Plaintiff filed a Response (Doc. #27) and supporting documentation (Docs. ##27-1 - 27-21) on May 18, 2017. A Reply (Doc. #3) and Sur-Reply (Doc. #34) were filed. For the reasons set forth below, the motion is denied.

**I.**

A court may grant summary judgment only if satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it goes to "a legal element of the claim under the applicable substantive law" and thus may impact the case's outcome. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). "An issue of fact is 'genuine'

if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004).

"The burden of establishing that there is no genuine issue of material fact lies with the moving party." Walker v. Darby, 911 F.2d 1573, 1576 (11th Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). "[O]nce the moving party has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial," the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial. A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Id. at 1576–77. In ruling on the motion, the court must view all evidence and draw all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).

Summary judgment should be denied not just where the parties disagree on issues of material fact, but also "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983); see also Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007) ("If a reasonable fact finder evaluating the evidence could

draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."). Put simply, if the resolution of a material fact or the inference to be drawn therefrom presents a "he said, she said" scenario, and if the record has evidence genuinely supporting both sides of the story, then summary judgment is not appropriate.

**II.**

This case alleges unlawful retaliation in violation of the Age Discrimination in Employment Act (ADEA) (Count I) and the Florida Civil Rights Act (FCRA) (Count II) against the Town of Fort Myers Beach, Florida (defendant or Town), which is plaintiff Jim Carrasco's (plaintiff or Carrasco) former employer. (Doc. #1.)[1] Plaintiff seeks injunctive relief, back pay, front pay, reimbursement for lost expenses, declaratory relief, compensatory damages, and his attorney's fees and costs. (Id.)

In December 2006, Carrasco, a fifty-eight year old male, was hired by the Town as a Zoning Permit Technician in the Community Development Department. (Doc. #22, ¶¶ 1-2.) Kenneth Miller (Miller) was plaintiff's immediate supervisor during the relevant time period, and Terry Stewart (Stewart) served as the Town

---

[1] Although plaintiff's Complaint states under the "Causes of Action" section (Doc. #1, p. 1) that the action is brought for age discrimination and retaliation in violation of the ADEA and FCRA, the Complaint only alleges two counts for retaliation.

Manager. (Id. at ¶ 5.) Plaintiff was promoted in July 2012 to Community Development Technician and received a salary increase. (Id. at ¶¶ 6-9.) The position description states that plaintiff was to perform site reviews, assist the public in completing the permitting process, and address inquiries regarding building codes and other ordinances. (Doc. #27-1.)

On or about October 9, 2012, plaintiff filed his first Charge of Discrimination with the EEOC based on age.[2] The EEOC sent the Town a Notice of the Charge on February 28, 2013. (Doc. #27-6.) Plaintiff filed a second Charge of Discrimination on or about March 5, 2013, alleging retaliation for filing his first charge of discrimination[3] (Doc. #27-20), which the Town received notice of in March 2013 (Doc. #27-7). After Carrasco filed the Charges, his pay rate and job title remained the same.

Although the parties agree that plaintiff visited a property located at 561 Palermo Circle (the Property) in February of 2013[4],

---

[2] Although a copy of Carrasco's first Charge of Discrimination is not in the record, it appears the Charge alleged age discrimination and equal pay violations.

[3] Specifically, the second Charge stated: "I filed a charge of discrimination against the above referenced employer in October 2012. Subsequently, I am being retaliated against by constant surveillance and also being demoted from my current workload and responsibilities. I also believe that they are demoting me because there have been some bad zoning decisions made by Walter Fluegel and Leslee Chapman." (Doc. #27-20.)

[4] Testimony shows that this event likely occurred on or about February 8, 2013.

the parties' version of events as to what transpired at the Property vary greatly; therefore, the following is a summation of the visit taken from both parties but is not necessarily accepted as undisputed evidence. The owner of the Property and long-time local builder, Joe Orlandini, had been in the process of constructing a home and pool on the Property and was obtaining permits from the Town to do so. In the permitting process, an issue had arisen as to whether an elevated pool deck at the back of the Property should be approved. Although Carrasco had not been instructed by the Town to visit the Property that day, Carrasco had previously worked on the permit review process for the Property and did not believe that an elevated pool deck should be approved based upon the Town's building codes. Plaintiff did not advise his supervisors that he intended to visit the Property that day, and did not disclose that he visited the Property afterwards. Carrasco visited the Property on his way home from work and after work hours.

    Orlandini testified that he was on the Property that evening when Carrasco drove up in his personal vehicle. Orlandini was not expecting him but the two knew each other from prior dealings Orlandini had with the Town on permitting issues. Carrasco was upset and the two engaged in a verbal altercation regarding whether the elevated pool deck should be permitted and Carrasco was making negative comments about Town employees. It is disputed whether

plaintiff ever went onto the Property to view the pool deck or viewed it from the street. The entire exchange lasted about 5-10 minutes and Carrasco left. Plaintiff testified that the exchange was pleasant.

Nothing in the record establishes that Carrasco was invited to the Property that evening and Carrasco believes that he was trying to "protect the Town." (Doc. #23-1, 91:13-18.) Plaintiff offered the Declaration of Rick Sebastian, a former Town employee, who states that site visits were not required to be scheduled, nor was there a requirement that only those involved with the permit approval process be allowed to conduct site visits. (Doc. #27-3, ¶ 9.) Carrasco testified that it was typical for him to conduct site visits such as the one to Orlandini's property after business hours and on his way home. (Id. at 92:20-25.)

Weeks later, Orlandini was in the Town's office to discuss permitting issues with the Town's Community Development Director, Walter Fluegel, and Orlandini mentioned Carrasco's visit to the Property. Fluegel and Orlandini are personal friends and have a long-term relationship working on permitting issues. When Orlandini told Fluegel what had happened, Fluegel called in Stewart (the Town's Manager) to his office to hear the story. Fluegel later asked that Orlandini reduce his verbal complaint to writing[5],

---

[5] The Declaration of Terry Stewart states that it is the Town's procedure regarding customer service complaints to reduce

which he did in a letter addressed to Stewart and dated March 27, 2013. (Doc. #23-4.)

On April 23, 2013, the Town provided Carrasco with a copy of Orlandini's letter and the Town's Notice of Intent to Issue a Written Reprimand because his actions violated the Town's Personnel Manual. (Doc. #23-5.) Carrasco prepared a written response, dated the same day, reciting his version of the events that had transpired. (Doc. #23-6.) He states that there was no verbal altercation but he was there to see the elevated pool deck and spoke to Orlandini about the Town's code.

The Town claims that it conducted an investigation into Orlandini's complaint, and credited Orlandini's version of the events. (Doc. #23-2, ¶ 14.) As a result of the investigation, on May 23, 2013, Stewart issued Carrasco a written reprimand and placed him on a 90-day performance improvement plan[6] in order to work on improving his interpersonal skills, maintain a positive image for the Town, and refrain from policy interpretations if he

---

any verbal complaints to writing. (Doc. #23-2, ¶ 13.) In response, plaintiff offers the Declaration of Rick Sebastian, a former Town employee, who states that this was not the policy. (Doc. #27-3, ¶ 10.)

[6] The Town states that Carrasco's conduct during the unscheduled visit would have justified his immediate termination pursuant to the Town's Policies and Employees Handbook, but Stewart agreed to implement the 90-day performance improvement plan in an effort to allow Carrasco time to improve his work performance. (Doc. #23-2, ¶ 16.)

did not attend departmental staff meetings. (Id. at ¶¶ 15-17; Doc. #23-11.) The written reprimand stated that Carrasco's unprofessional conduct at the Property, as well as his conduct towards his fellow Town employees, were unacceptable. (Doc. #23-11.) The Town states Carrasco had previously been counseled about his poor interpersonal skills with co-workers, supervisors, and members of the public before it placed him on a performance improvement plan. (Doc. #23-3, ¶ 20.) The Town is not clear on the dates of any alleged indiscretions except for events in April of 2013 wherein Stewart authored notes regarding some of Carrasco's aggressive and disruptive interactions with fellow employees, which were within the 90-day performance period. (Doc. #23-3, p. 6.) Prior to May 23, 2013, the Town had not issued any kind of discipline to Carrasco. (Doc. #27-2, ¶ 4.) Plaintiff has submitted a portion of the Town's Disciplinary Matrix and Procedures (Doc. #27-21), and alleges that the Town did not follow its procedures before terminating plaintiff.

On May 24, 2013 – one day after he was issued the written reprimand – Carrasco sent the EEOC written correspondence wherein he states that Fluegel "continues to retaliate towards me . . . I fear that all this is getting out of control and I am fearful for my job and wellbeing at the Town of Ft. Myers Beach." (Doc. #27-13.) On June 19, 2013, plaintiff sent Miller (his immediate supervisor) an email about the "degradation" of his position.

(Doc. #27-5.) Because plaintiff failed to adhere to the terms of the performance plan, the Town terminated him on June 24, 2013.

Following his termination, and while his second Charge was pending, plaintiff was interviewed by the EEOC on or about July 5, 2013. The notes from the interview state that Carrasco was "demoted" after his initial EEOC Charge and his regular tasks were taken away from him and replaced by clerical tasks. (Doc. #27-16.) On July 9, 2013, plaintiff sent the EEOC notice of his termination, stating "I am sure it's because first I filed a discrimination complaint with the EEOC and then a retaliation charge." (Doc. #27-15.) Carrasco again wrote to the EEOC on June 30, 2014, stating that he was wrongfully terminated for filing a complaint with the EEOC (Doc. #27-18), and again on October 15, 2014, stating "I lost my job because I filed a complaint with the EEOC" (Doc. #27-17), both while the second Charge was pending.

Defendant argues that summary judgment is appropriate because plaintiff failed to exhaust his administrative remedies, fails to establish a prima facie case, and that the Town can offer a legitimate, non-discriminatory reason for Carrasco's termination.

**III.**

**A. Exhaustion of Administrative Remedies**

The ADEA prohibits employers from discriminating against employees based on their age[7] and retaliating against employees who engage in ADEA-protected activity. Both sides agree that before a party may bring a cause of action for violation of the ADEA, he must first file a timely complaint against the discriminating entity with the EEOC and receive a Notice of Right to Sue from the EEOC. Maynard v. Pneumatic Prods. Corp., 256 F.3d 1259, 1262 (11th Cir. 2001); 29 U.S.C. § 626(e). To be timely in Florida, a charge of unlawful discrimination must be filed with the administrative agency not more than 300 days after the allegedly unlawful employment practice occurred. Bost v. Fed. Express Corp., 372 F.3d 1233, 1238 (11th Cir. 2004); Brooks v. CSX Transp., Inc., 555 F. App'x 878, 880 (11th Cir. 2014). If plaintiff fails to comply with this requirement, he cannot assert a claim in court. Sheffield v. United Parcel Serv., Inc., 403 F. App'x 452, 454 (11th Cir. 2010) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002)). In addition to being a pre-condition for suit, a "judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow

---

[7] The ADEA prohibits employers from discharging an employee who is at least 40 years of age because of that employee's age. 29 U.S.C. §§ 623(a)(1), 631(a).

out of the charge of discrimination." Penaloza v. Target Corp., 549 F. App'x 844, 848 (11th Cir. 2013) (internal citations omitted); Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004). Judicial claims that "amplify, clarify, or more clearly focus" the allegations in the EEOC charge are permitted, but the plaintiff cannot allege new acts of discrimination. Id. at 1279–80. Nevertheless, courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [the ADEA]" and should construe an EEOC complaint broadly. Penaloza, 549 F. App'x at 848 (quoting Gregory, 355 F.3d at 1280).

Exhaustion of administrative remedies is a matter in abatement that should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1338, 1374–75 (11th Cir. 2008) (addressing the Prison Litigation Reform Act's exhaustion requirements). It is permissible for a district court to consider facts outside of the pleadings and resolve factual disputes, so long as the factual disputes do not decide the merits and the parties are given sufficient opportunity to develop a record. Id. at 1376.

> Deciding a motion to dismiss for failing to exhaust administrative remedies is a two-step process. First, the court must look to the factual allegations in the defendant's motion and the plaintiff's response, taking the plaintiff's version of the facts as true to the extent that it conflicts with that of the defendant. If the complaint is not subject to dismissal at this step, the court must then make specific findings to resolve the parties' factual disputes, and determine whether the defendant bore its burden of proving that the plaintiff failed to exhaust his administrative remedies.

Basel v. Sec'y of Defense, 507 F. App'x 873, 874–75 (11th Cir. 2013) (citation omitted).

The Town argues that plaintiff's EEOC Charges were still pending before the EEOC at the time of his termination, and Carrasco never filed a Charge after his termination, which is a "discrete act" of retaliation that must be raised in a new Charge. But based on the facts of this case, a new charge after his termination was not required. Plaintiff filed a Charge of Discrimination with the EEOC on March 5, 2013, asserting retaliation because he filed a Charge in 2012.  (Doc. #27-20.) Following his termination, plaintiff sent communications to the EEOC, stating that he was terminated because he filed his EEOC Charge, and he informed the EEOC during his interview that he had been terminated.  See Docs. #27-15 – 27-18.  In Baker v. Buckeye Cellulose Corp., the Eleventh Circuit found that a claim of retaliation could reasonably be expected to grow out of an original charge of discrimination.  856 F.2d 167, 169 (11th Cir. 1988).  In doing so, the court noted that it has long been established in the Eleventh Circuit that a judicial complaint is defined by the scope of the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination" and the scope of an EEOC complaint should be strictly interpreted.  Id.; Litman v. Dristy, -- F. App'x --, 2017 WL 3027584, at *4 (11th Cir. 2017).

The same result applies in this case. The Town terminated plaintiff while the EEOC's investigation was pending and before the EEOC issued a right-to-sue letter. The termination is not a separate act that requires a new EEOC Charge; rather, it grows out of or is the culmination of the alleged ongoing efforts of the Town. The EEOC was aware of the termination through its correspondence and interview of plaintiff when it was investigating his second Charge. "The purpose of this exhaustion requirement is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Gregory, 355 F.3d 1277, 1279 (11th Cir. 2004). That purpose is fulfilled here.

**B. Prima Facie Case**

An employee can use direct or circumstantial evidence to make out either a discrimination or retaliation claim. See Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012) (discrimination); de la Cruz v. Children's Trust of Miami–Dade Cnty., 843 F. Supp. 2d 1273, 1281 (S.D. Fla. 2012) (retaliation) (citing Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1207 (11th Cir. 2001)).

Here, it is undisputed that there is no direct evidence that the termination was because of plaintiff's age. The Supreme Court has never held that the burden shifting McDonnell-Douglas

framework[8] applies to an ADEA claim based upon circumstantial evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141-42 (2000); Gross v. FBL Financial Servs., Inc., 557 U.S. 167 (2009). The Eleventh Circuit, however, does apply the McDonnell-Douglas framework to such an ADEA claim. Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998), cert. denied, 525 U.S. 962 (1998); Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000).

> Where, as here, a plaintiff attempts to use circumstantial evidence to establish unlawful discrimination under the ADEA, this court employs the following burden-shifting scheme. Initially, the plaintiff must establish a prima facie case of discrimination. The employer then must respond with a legitimate, nondiscriminatory reason for its actions. In order to prevail, the plaintiff must establish that the employer's articulated legitimate, nondiscriminatory reason was a pretext to mask unlawful discrimination."

Turlington, 135 F.3d at 1432.

To establish a prima facie case of discriminatory retaliation, an employee must show that: (1) he engaged in protected conduct; (2) he suffered an adverse employment action; and (3) there is a causal relationship between the two events. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002).[9]

---

[8] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

[9] FCRA age discrimination claims are subject to the same analysis as ADEA claims. Cardelle v. Miami Beach Fraternal Order of Police, 593 F. App'x 898, 901 (11th Cir. 2014); Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1455 n.2 (11th Cir. 1997); Valenzuela v. GlobeGround N. Am., LLC, 18 So. 3d 17, 21 (Fla. 3d

Here, defendant disputes that the second and third elements are satisfied and therefore the entry of summary judgment is appropriate.

For both discrimination and retaliation claims, after an employee establishes a prima facie case, the McDonnell Douglas framework is identical. Establishing a prima facie case creates a presumption of retaliation and the employer can rebut that presumption by presenting evidence of one or more legitimate non-retaliatory reasons for its action. See Kragor v. Takeda Pharms. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012) (citing McDonnell Douglas, 411 U.S. at 802-03). The employer's burden on rebuttal is only one of production. See id. (citing Reeves, 530 U.S. at 142). The Town also argues that it can establish a legitimate, non-retaliatory reason for plaintiff's termination.

If the employer presents one or more non-retaliatory reasons, the employee "is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination." Sims v. MVM, Inc., 704 F.3d 1327, 1332 (11th Cir. 2013). The employee can show pretext in two ways: "either directly by persuading the [C]ourt that a discriminatory reason more likely motivated [the employer] or indirectly by showing that [the employer's] proffered explanation is unworthy of credence." Kragor, 702 F.3d at 1308

---

DCA 2009).

(quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

### (1) Adverse Employment Action

Defendant argues that because Carrasco failed to exhaust his administrative remedies with respect to his termination, the only purported adverse employment actions that remain are a written reprimand, which did have a material adverse effect on his employment as plaintiff's pay rate never changed. Generally a written counseling that does not amount to a reprimand which has no effect on an employee's salary and does not impact any of the terms of employment, does not constitute an adverse employment action. Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1241–42 (11th Cir. 2001). "[C]riticisms of an employee's job performance — written or oral — that do not lead to tangible job consequences will rarely form a permissible predicate for a [discrimination] suit." Id. (citing cases).

As discussed above, the Court has found that the failure to exhaust argument fails and the Court will consider the fact that plaintiff was terminated. Although plaintiff did receive written reprimand, counseling, and was put on a performance plan, plaintiff was also terminated, thus satisfying the adverse employment action prong.

### (2) Causal Relationship Between Protected Conduct and an Adverse Employment Action

The third element, a causal relationship, requires an employee to demonstrate that the decision-maker was aware of his protected conduct and that the protected conduct and the adverse action were not wholly unrelated. McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008). Causation may be inferred by close temporal proximity between the protected conduct and the materially adverse action taken by the employer. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). "We have held, however, that in the absence of other evidence tending to show causation, a three-to-four month time gap between the protected conduct and the adverse employment action is insufficient to establish causation on its own. Walker v. Sec'y, U.S. Dept. of Air Force, 518 F. App'x 626, 628 (11th Cir. 2013) (citing Thomas, 506 F.3d at 1364); Brown v. Ala. Dept. of Transp., 597 F.3d 1160, 1182 (11th Cir. 2010) (holding that a three month timespan between the protected activity and the adverse action was too long).

It is undisputed that the Town had knowledge of the EEOC Charges, the last of which was filed on March 5, 2013, and received by the Town at the end of March 2013. The Town argues that because plaintiff was terminated over three months later – on June 24, 2013 – he has failed to establish a causation. The Court

disagrees. There is other evidence in the record tending to show causation. Taking the evidence in a light most favorable to plaintiff, beginning in March 2013, the Town solicited a written complaint from Orlandini; credited Orlandini's version of events without conducting a formal investigation; issued Carrasco a written reprimand and placed him on a 90-day performance plan, and terminated him one month later on June 24, 2013. There is sufficient evidence of a temporal proximity between plaintiff's EEOC Charge and his termination such that summary judgment is inappropriate.

**C. Legitimate, Non-Retaliatory Reason**

If plaintiff establishes a prima facie case, the employer then must respond with a legitimate, non-retaliatory reason for its actions. The Town argues it has a legitimate and non-retaliatory reason for issuing Carrasco a written reprimand and terminating him, namely, Carrasco's unscheduled visit to 561 Palmermo Circle and the verbal altercation with Orlandini. But as detailed above, the parties diverge greatly on their version of events that transpired at the Property and the parties dispute whether it was proper for plaintiff to visit the Property after hours. Indeed, plaintiff has offered evidence that it was normal practice for him to conduct site visits after hours. Plaintiff also alleges that the Town departed from its own disciplinary policy when it solicited the written complaint from Orlandini.

Therefore, there is evidence from which a reasonable jury could find that plaintiff was terminated because of his EEOC Charge; therefore, defendant's motion for summary judgment is denied.[10]

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion for Summary Judgment (Doc. #22) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __25th__ day of July, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

---

[10] Because the Court finds that there is a genuine issue of material fact whether the Town has articulated a legitimate, non-retaliatory reason for terminated plaintiff, the Court need not address whether plaintiff has established that the reason is a pretext to mask unlawful discrimination.